UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY,<br><br>                    Appellant,<br><br>          v.<br><br>BARRY A. CHATZ, as TRUSTEE for the<br>CFB/WFB LIQUIDATING TRUST,<br><br>                    Appellee. | Case Nos.  17-cv-05281-WHO; 17-cv-06989-WHO<br><br>**ORDER ON CONSOLIDATED<br>BANKRUPTCY APPEALS** |

**INTRODUCTION**

These consolidated bankruptcy appeals stem from Chapter 11 proceedings in Bankruptcy Court filed by debtors Chicago Fire Brick Co. ("CFB") and Wellsville Fire Brick Co. ("WFB") ("Debtors"), establishing a Liquidating Trust to handle asbestos-related claims and disbursements to claimants from debtors' insurance policies.  Appellant Continental Casualty Company ("Continental"), an insurance company that insured debtors, appeals from two decisions from the Bankruptcy Court, the Hon. Roger L. Efremsky presiding.  From the underlying bankruptcy matter, Continental appeals Judge Efremsky's decision denying Continental's motion for leave to have an Illinois court decide whether policy coverage existed for the claims the Liquidating Trust asserted against Continental.  From the related adversary proceeding ("Adversary Proceeding"), Continental appeals from Judge Efremsky's decision finding Continental liable to the Trust for $3.5 million in claims, as well an award of penalties for Continental's vexatious conduct.

The heart of Continental's consolidated appeal is its argument that Judge Efremsky erred in preventing Continental from presenting its argument on the merits that coverage did not exist over the vast majority of claims the Trustee submitted to it.  As explained in detail below, Judge Efremsky appropriately concluded that Continental had the opportunity to make that argument in

the Plan's claims process and in the Adversary Proceeding, but its former counsel declined, repeatedly, to do so. As such, the Bankruptcy Court appropriately determined and I determine separately that, under the doctrines of judicial and equitable estoppel, Continental was bound to the arguments it actually raised on the claims submitted and presented in the Adversary Proceeding. The Bankruptcy Court also appropriately concluded that Continental's attempt to change course and belatedly raise the coverage issue was vexatious and unreasonable.

Because I find that Judge Efremsky's order and judgment based on estoppel and assessing penalties in the Adversary Proceeding were appropriate, I need not separately reach the denial of Continental's motion for leave to file a state court complaint to determine the coverage issue that Continental forfeited in the bankruptcy proceedings.

## BACKGROUND

### I. THE DEBTORS DECLARE BANKRUPTCY AND THE DEBTORS AND CONTINENTAL AGREE TO A PROCESS FOR SETTLING CLAIMS

The Debtors made and distributed refractory products, some of which contained asbestos. CA-60. Facing numerous personal injury and wrongful death lawsuits, the Debtors filed for Chapter 11 bankruptcy in 2001. *Id.* The Bankruptcy Court confirmed the Debtors' Joint Chapter 11 Plan on September 7, 2012. CA-660. The Plan established a Liquidating Trust and provided for the appointment of the Trustee to liquidate the Debtors' remaining assets and make distributions on asbestos claims according to the Plan's requirements. CA-33-35; 212-33.

At the time they filed in bankruptcy, the Debtors had approximately $2.5 million in remaining insurance coverage under three Continental policies issued decades earlier. CA-1020; CA-982. After filing, the Debtors negotiated "buyback" settlements with three of their primary insurance carriers; Continental was the only solvent primary insurance carrier that declined to settle. CA-62; 1437.

Prior to the confirmation of the Plan, Continental filed a proof of claim. CA-661. The proof of claim was "contingent and unliquidated" and based on a "potential right of setoff" because "confirmation of the pending plan may leave Continental without the participation of the Debtor's other insurance carriers" and Continental "may be asked to pay some or all of others'

2

share of payments due for defense of claims against the Debtor." CA-661. Through the claim, Continental demanded performance of Debtors' "reciprocal obligations" under applicable insurance policies and, "to the extent such obligations give rise to a 'Claim' within the meaning of § 101(5) of the Bankruptcy Code, Continental hereby demands payment on its claim." CA-661.

Because Continental had not settled, over an eight month period Continental and the Debtors negotiated a specific process for handling any asbestos claims the Trustee might submit to Continental. CA-35-37. The Debtors incorporated this process into Section 8.3 of the Plan. *See Id*. Under Section 8.3 of the Plan, the Trustee could submit asbestos claims to Continental, with limits on how many claims could be submitted at once, and Continental had 90 days to accept or reject each claim. CA-35-37. For each claim, the Trustee had to: (1) provide documentation; (2) state the liquidated value; and (3) state "the allocated percentage" of that value that the Trustee contended Continental owed. CA-35.

On this appeal, Continental places much emphasis on the following. First, the Plan "stated no consequence" for failure on the part of Continental or the Trustee to "meet the terms" of Section 8.3. Appellant's Opening Brief (AOB) at 19. Second, the Order confirming the Plan reserved all of Continental's and the Trustee's rights, subject only to Section 8.3:

> Notwithstanding anything to the contrary in this Confirmation Order, the Plan, the Trust Distribution Procedures, or any settlement agreement, nothing in this Confirmation Order, the Plan, the Trust Distribution Procedures or any settlement agreement (including any other provision that purports to be preemptory or supervening) shall in any way operate to impair, or have the effect of impairing either (a) an insurer's legal, equitable or contractual rights, if any, in any respect, except to the extent that such insurer's rights are expressly impaired or limited in a settlement agreement to which it is a party, or, in the case of Continental, by section 8.3 of this Plan, or (b) the legal, equitable or contractual rights of the Debtors and/or the Liquidating Trust against the Debtors' insurers, if any, in any respect, except to the extent that such rights are expressly impaired or limited in a settlement agreement to which the Debtors and/or the Liquidating Trust are parties.

CA-271; AOB 19-20. Third, the Plan reserved the parties' rights with regard to "rights and arguments as to jurisdiction and venue." CA-271; 52. Finally, the parties agreed that Illinois law would govern the Plan, unless "a rule of law or procedure is supplied by federal law. . . ." CA-51.

3

## II. THE TRUSTEE SUBMITS CLAIMS TO CONTINENTAL, WHO NEITHER ACCEPTS NOR REJECTS THEM WITHIN THE TIME REQUIRED

In May 2015, the Trustee began submitting claims to Continental. Between May and September 2015, the Trust submitted 249 claims. CA-804-05; 921-44; 946-48; 956-60; 962-69.[1] In each Proposal, the Trustee contended that Continental's allocated percentage was 100% of the liquidated value of each Tendered Claim. Each Proposal also included a cover letter stating that:

> [E]ach claim results from repeated exposure to one or more asbestos-containing products for which one of the Debtors has legal responsibility, including exposure during the coverage period of the Continental Policies.

CA-3550-51. Continental informed the Trustee that in its view the Trust's submissions "did not qualify as 'Proposals' under § 8.3," because 100% was not a permitted allocation unless the evidence showed that the Claimant was exposed to asbestos exclusively during Continental's policy periods. CA-3551. The Trustee responded that he believed an allocated percentage of 100% for each claim was appropriate under applicable Illinois law. CA-805, 953-54.[2] In response, Continental disagreed with this reading of the Plan but did not offer an alternative proposed allocation. CA-1505.

The 249 claims tendered by the Trustee between May and September 2015 totaled $3,410,000. CA-807. This amount exceeded the $2,512,444 remaining in coverage under the Debtors' Continental policies. CA-807. By December 31, 2015, Continental's 90 day window to accept or reject each claim had closed. That day, the Trustee initiated an adversary proceeding against Continental before the Bankruptcy Court ("Adversary Proceeding").

## III. THE TRUSTEE FILES AN ADVERSARY COMPLAINT AGAINST CONTINENTAL

The Trustee's December 31, 2015 adversary Complaint against Continental sought

---

[1] Before and since the inception of the Adversary Proceeding, over 1,133 claims have been submitted. CA-1022.

[2] The Trustee and ultimately the Bankruptcy Court, as explained in its Memorandum Decision on the Trustee's Section 155 motion, disagreed with Continental's position, concluding that under the triple-trigger standard, coverage is triggered if a claimant suffers bodily injury, manifests sickness or is diagnosed with disease during an insurer's policy period. *See Zurich Ins. Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 45-46 (1987).

4

declaratory relief and asserted breach of contract claims with respect to Continental's obligations under the Plan and policies. CA-409-27. The Complaint, as amended, also sought damages under Section 155 of the Illinois Insurance Code for Continental's "unreasonable delay and vexatious refusal to pay [claims] when due." CA-794-812.

Continental answered and counterclaimed, seeking a declaration that the Trustee had not complied with the "condition precedent" in Section 8.3 because the phrase "allocated percentage" did not permit the Trustee to seek the full liquidated value of any claim from Continental "without allocating a percentage [to the Debtors' other] insurers," and that Continental owed "no recovery to the Trust . . . absent an allocated percentage proposed to Continental." CA-984; CA-907-85. Continental also objected to the bankruptcy court entering judgments against Continental on issues where the bankruptcy court lacked "core" jurisdiction. CA-971, 981; *see* Fed. R. Bankr. P. 7012(b). However, it raised no issue concerning whether there was coverage for some or all of the claims; its counterclaim concerned only the appropriate allocating percentage under the Plan under Illinois law. The affirmative defenses Continental raised did address issues related to coverage, but *did not* allege that Continental's policies did not cover the tendered claims.

The Trustee continued to submit claims to Continental. Between December 31, 2015 and August 22, 2016, the Trustee submitted 1,298 additional claims. CA-2315-16. The current aggregate value of claims tendered is now over $8 million. The Trustee continued to request that Continental provide its proposed allocation (in the face of Continental's continued rejection of the Trustee's 100% allocation) and explained that, in any event, an allocation percentage as low as 44% would require Continental to pay its entire remaining limits to the Trust. *See, e.g.* CA-2317-18.

## IV. CONTINENTAL'S COUNSEL ARGUES AND TAKES A POSITION ON COVERAGE IN THE ADVERSARY PROCEEDING

At a May 2016 status conference, the Trustee asked the bankruptcy court to set a trial date for the Adversary Proceeding. CA-1054-55. Continental's counsel, Raymond J. Tittmann, opposed that request, describing the issues raised in the Adversary Proceeding as a "kind of silly case to litigate," and saying that the entire case turned on the issue of whether the Trust had

5

provided an "allocated percentage" to Continental, as he believed was required by Section 8.3:

> [If the Court] says that the allocated percentage means 100%, then the case is over, right? Because then that is effectively saying we have to pay everything, so we pay everything.

CA-1052; 1058-1059. The Bankruptcy Court agreed with Tittmann's proposal and did not set a trial date. Instead, the Bankruptcy Court set a briefing schedule on the allocated percentage issue and Continental moved for partial summary judgment on its counterclaim, arguing only that the Trustee had not complied with the Section 8.3 allocation requirements. CA-1010-37. As of this juncture, Continental *had not argued* in any appearance, motion, or brief before the Bankruptcy Court that the issue of coverage for any of the claims needed to be determined.

 In November 2016, the Bankruptcy Court denied Continental's motion for partial summary judgment on its counterclaim and held that: (a) Continental's interpretation of § 8.3 was incorrect; (b) the Trustee's Proposals had complied with Section 8.3; and (c) Continental had a duty to respond to the Proposals. CA-1435-60. At the December 6, 2016 status conference to address the remaining Section 155 issues (whether Continental had engaged in an unreasonable delay and vexatious refusal to pay claims under Illinois law), the Trustee again requested a trial. Continental again demurred, saying that there was nothing left to try. Referring to the threshold legal issue and the summary judgment decision, Mr. Tittmann said:

> You decided that issue adverse to us and we think it did decide the case . . . [O]ur view is that we're ready to enter judgment in whatever procedural manner you would like, but I just don't see that there's anything left to try. You know we put up our best argument and we didn't win, but I think the issue has been decided.

CA-2421. Referring to the Trustee's request for extra-contractual damages under Section 155, Mr. Tittmann said:

> [W]hat you'd need is you'd have to enter a judgment, which I think we could do at this time, frankly. I think we could stipulate to enter a judgment because I think we've lost our breach of contract argument, but I think that we'd have to enter that judgment and then they'd have to [indecipherable] tax costs, which Illinois law allows them to do under certain circumstances.

CA-2425. Mr. Tittmann also suggested that the parties ought to "get together and resolve it" but they had not yet had a chance to do that. *Id*.

United States District Court
Northern District of California

United States District Court
Northern District of California

The Bankruptcy Court continued the status conference to December 12, 2016 to allow the parties to discuss their next steps. At that status conference, both parties explained that they had agreed to brief whether the Trustee could make the requisite showing for extra-contractual damages under Section 155 and the Bankruptcy Court did not need to set a trial date. The Trustee confirmed for the record the parties' agreement on how to proceed: (a) the parties would delay entry of judgment on the breach of contract claims pending resolution of the Section 155 claim to avoid multiple appeals; and (b) at Continental's suggestion, the parties would address the Section 155 issue by written submissions to avoid a trial. CA-2408-13.

Accordingly, the Bankruptcy Court set aside its plans for a trial and ordered briefing on the Trustee's claim for damages under Section 155. CA-1466-67. The briefing proceeded in two phases. Briefing on the first phase was complete as of February 15, 2017, and the initial hearing was set for March 7, 2017. The Trustee moved for an award under Section 155 of $2,311,635.78 plus interest. CA-1469-92. In opposition, Continental argued that an award under Section 155 was inappropriate because Continental had taken a legitimate position on the interpretation of the Plan, and had not caused any unreasonable delay in the litigation, or in paying tendered claims. To the extent that there was a delay, Continental claimed it was entirely the fault of unreasonable positions taken by the Trustee. CA-2187. In support of the argument that it had not caused any delay, referring to the summary judgment decision and the parties' discussions surrounding the December status conferences, Mr. Tittmann filed a declaration stating:

> I acknowledged that the Trustee had prevailed and consequently I suggested that, as predicted, the Court's Order did indeed resolve the issues in dispute. The Trustee's counsel sought a trial but I advised that we had already lost and judgment should be entered against Continental. I also acknowledged that the Trustee had a right to seek fees and a penalty under 215 ILCS 5/155 but that a judgment need not be delayed on that account, and that the expense of a trial would not be necessary.

CA-2226. In its sur-reply brief to the Trustee's motion for Section 155 fees and penalties, Continental discussed its offer to have judgment entered and its astonishment at the Trustee's response that this would create piecemeal litigation, stating:

> Continental was admitting defeat, providing a substantial concession to the Trustee, and voluntarily forgoing other arguments it could

7

United States District Court
Northern District of California

have made, all in an effort to end this litigation. CA-2361.

In response, the Trustee argued that an award of fees and costs was appropriate because Continental vexatiously and unreasonably delayed paying the tendered claims and there was no *bona fide* dispute regarding the Plan to justify this. The Trustee further argued that he repeatedly tried to elicit a response from Continental on the allocation issue to determine how many additional claims he had to submit before Continental would concede that the tendered claims exhausted its coverage and end its unreasonable delay. CA-3557.

When this first phase of briefing was complete in February 2017, Continental had not identified any tendered claims that did not meet the medical requirements, the asbestos exposure requirements, or were otherwise not covered by its policies.

## V.     THE QUESTION OF WHETHER CONTINENTAL'S POLICIES IN FACT COVERED THE TRUST'S CLAIMS IS RAISED FOR THE FIRST TIME

Throughout the progression of the case up to this point, neither party had disputed whether Continental's policies covered the tendered claims. On March 20, 2017, a month after briefing on the Section 155 issue was complete, Continental filed an *ex parte* application seeking to file a declaration from Mr. Tittmann explaining that Continental believed that there was a defense to coverage for at least some of the claims and that:

> At my direction and under my supervision, our office reviewed numerous claims tendered by the Trustee to Continental. As a general matter, the tendered documentation we reviewed does not establish that the claimants were exposed to [CFB's] asbestos-containing product during Continental's policy periods, as would be necessary to trigger Continental's policies under the standard enunciated in *Zurich* . . . .

CA-2377.

This was Continental's first attempt to argue that there were factual issues regarding the asbestos exposure evidence for the tendered claims. Mr. Tittmann attached three sample claims as examples. The Trustee disputed the implication that these claims or the evidence regarding coverage for these claims was somehow newly discovered, noting that the claims had been submitted to Continental in May 2015. The Trustee's position was, further, that the example claims fell within the policies' coverage. However, the Trustee main argument was that

8

Continental's "consent to judgment on the breach of contract claims, resolving all remaining issues other than the Section 155 issue, prevented Continental from seeking to raise coverage issues." CA-2394. On March 27, 2017, the Bankruptcy Court entered an Order continuing the hearing on the Section 155 motion to May 31, 2017. On March 29, 2017, the bankruptcy court denied Continental's *ex parte* application. CA-2401-02.

Following the denial, Continental brought in new counsel who took several immediate actions. First, on May 8, 2017, Continental filed a complaint against the Trustee in Illinois state court seeking both a declaration that the Trust's claims were not covered by Continental's policies and litigation fees and costs from the Trustee. CA-2438; CA-3013.

Second, on May 10, 2017, Continental's new counsel docketed a letter to the Bankruptcy Court advising that Continental had filed the state court complaint. The letter states that "significant insurance coverage issues have emerged as to whether the tendered claims 'trigger' the Continental policies," Continental had "newly-discovered evidence" showing that "any exposure" would have occurred years prior to the inception of Continental's policies, there was "no evidence" that the claimants were diagnosed with an asbestos related disease or sickness during its policy periods, and so "no coverage [was] available" for the Tendered Claims. The letter requested a status conference to "more fully advise the Court" of these "developments." CA-2438-2440.

Third, on May 10, 2017, Continental moved to stay or abate the hearing and further proceedings on the Section 155 issue. It argued that the issue was not ripe for adjudication because coverage issues pending before the Illinois state court had not yet been decided and the Bankruptcy Court lacked jurisdiction to decide them. CA-2453.

Fourth, Continental submitted another declaration from Mr. Tittmann supporting the Motion to Stay and stating that"[his] office recently discovered deposition transcripts and written discovery responses showing that CFB discontinued its use of asbestos 13 years prior to inception of the Continental policies in 1985," and that "this newly discovered evidence shows that CFB took asbestos out of the implicated products 13-15 years before inception of the Continental policies." CA-2466. In its Motion to Stay, Continental argued that this alleged "newly discovered

9

1    evidence" showed that none of the tendered claims included exposure during Continental's policy

2    periods, nor alleged that a claimant suffered a sickness or disease resulting from exposure to

3    Debtors' asbestos products during its policy periods, so none of the tendered claims triggered

4    Continental's policies.  CA-2457.

5         The Trustee objected to Continental's motion to stay and to the request for a hearing on

6    shortened time.  The Trustee argued that: (a) the so-called "newly discovered evidence" had, in

7    substantially the same form, been given to Continental in October 2009;[3] (b) there was no support

8    for the assertion that refractory products installed in the 1960's and 1970's would no longer be

9    present in the 1980's (the underlying premise of Continental's revised position that its policies did

10   not provide coverage for any tendered claim); (c) in 1987 Continental acknowledged that "severe

11   asbestos exposure exists from prior products which [CFB] manufactured in the mid-1970's";[4] and

12   (d) the allegation that none of the tendered claims involved a manifestation of sickness or a

13   diagnosis of disease during the policy periods was demonstrably false.  Finally, the Trustee argued

14   that Continental should be judicially or equitably estopped from claiming the coverage issues were

15   not ripe when Continental had clearly stated on many occasions that there was nothing left to try

16   and that judgment should be entered against it on the coverage aspect of the Trustee's case.  CA-

17   2421.

18        On May 10, 2017, Continental also filed a Motion to Abstain and Remand from Insurance

19   Coverage Issues and a notice of hearing for June 15, 2017. CA-2650-84. Continental described the

20   same "newly discovered" evidence and argued that the test for permissive abstention under 28

21   U.S.C. § 1334(c)(1) was met.  It stressed that state law regarding insurance coverage controlled

22   and the Bankruptcy Court should defer to the state court where Continental filed its complaint for

23   declaratory relief.  It further argued that the Bankruptcy Court lacked core and noncore

24   jurisdiction over the insurance coverage issues.

25

26   _____

[3] The Trustee attached to his objection a 2009 letter to Continental's counsel, David Christian,
27   providing similar discovery documents and the same list of products with the same 1972 change in
     formulation as attached to the Tittmann Declaration.

28   [4] CA-2967.

United States District Court
Northern District of California

On May 17, 2017, the Bankruptcy Court entered two orders directing Continental and its counsel to show cause (a) why filing the state court complaint did not violate the *Barton* doctrine and (b) why Continental's counsel's letter was not an improper *ex parte* communication; it threatened contempt on both counts.[5]  Adversary Proceeding Dkt. 95; CA-2986-94.  The Bankruptcy Court set the OSCs for hearing on June 15, 2017 and continued the hearing on the Section 155 motion to that day.

On May 18, 2017, Continental dismissed its state court action.  CA-3007.  On May 22, 2017, Continental withdrew its letter to the Bankruptcy Court.  CA-2995-96.  On May 30, 2017, Continental withdrew its notice of hearing for the Motion to Abstain, but did not withdraw the motion itself. CA-2997-98.  On June 14, 2017, Continental filed a new motion seeking the Bankruptcy Court's permission to sue the Trustee in state court. CA-428-445.  At the June 15, 2017 hearing, the Bankruptcy Court ordered supplemental briefing on the Section 155 motion and discharged the OSCs.  Continental subsequently also withdrew its notice of hearing for the motion to stay or abate on June 23, 2017.

In its supplemental briefing on the Section 155 issue, Continental took a very different stance than its earlier positions, arguing that the Section 155 issue was not ripe because the coverage issue needed to be decided in state court first and that "newly discovered evidence" showed there was no coverage for any tendered claims. CA-3563.  Continental appended to the supplemental brief declarations from its current attorneys, Mr. Tittman, David Christian (a purported expert), two former CFB employees, and an account manager from its claims agent, intending to show that there were unresolved factual issues regarding insurance coverage for the tendered claims.  In response, the Trustee argued that Continental was judicially and equitably estopped from raising the coverage issue anew, and that judgment should be entered against Continental as previously discussed.  The Trustee also argued that Continental's latest activity was further confirmation of its vexatious and unreasonable conduct. CA-3563.

---

[5] In *Barton v. Barbour*, the Supreme Court held that a suit may not be brought against a receiver without leave of the receiver's appointing court. *Barton v. Barbour*, 104 U.S. 126, 136-37 (1881) (hereafter, "the *Barton* doctrine").

## VI. THE BANKRUPTCY COURT DENIES CONTINENTAL'S MOTION TO RE-FILE ITS STATE LAW COMPLAINT

On August 25, 2017, Judge Efremsky, in a 38 page decision, denied Continental leave to sue the Trustee in state court. CA-659-696. Judge Efremsky thoroughly detailed each phase of procedural history in the complex proceeding before turning to an in-depth analysis of the applicability of the *Barton* doctrine.

Judge Efremsky found that Continental's proposed coverage complaint would raise issues regarding the Trustee's actions in administering the estate because "administration of the estate" includes pursuit of the insurance coverage Continental *agreed* to provide in the manner it *agreed* to provide it by the Plan. He concluded that allowing Continental to litigate the coverage issue in a different forum would interfere with the Trustee's duties and the Court's supervision of the Trustee, outcomes the *Barton* doctrine was designed to guard against. This factor weighed in favor of denying Continental's request for permission to sue the Trustee in state court.

Additionally, while acknowledging that it may not have core jurisdiction over the coverage complaint, Judge Efremsky concluded that, at a minimum, he had "related to" jurisdiction over it because coverage issues were "inextricably intertwined" with the Plan, the Confirmation Order, the Trust Distribution Procedures, and the Liquidating Trust Agreement, which overlapped significantly with the issues raised and poised to be decided in the Section 155 motion. *See Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194 (9th Cir. 2005) (detailing the "close nexus" test for determining jurisdiction over matters related to a bankruptcy case post-confirmation).

Judge Efremsky also concluded that the Trustee was immune from suit in state court because his functions—including as related to the coverage issues—were both administrative and judicial. *See Curry v. Castillo (In re Castillo)*, 297 F.3d 940, 951 (9th Cir. 2002) (inquiring into the immunity historically awarded a bankruptcy trustee before considering whether the particular functions in the case involved the exercise of discretionary judgment). This weighed in favor of denying Continental permission to sue the Trustee in state court.

Accordingly, Judge Efremsky denied Continental's motion for leave to sue the Trustee in Illinois court.

### VII. THE BANKRUPTCY COURT RULES THAT CONTINENTAL IS ESTOPPED FROM LITIGATING THE COVERAGE ISSUE FURTHER, AND GRANTS THE TRUSTEE'S SECTION 155 MOTION

Almost three months later, on November 16, 2017, Judge Efremsky, in a 51 page decision, granted the Trustee's Section 155 motion, awarded the Trustee the remaining balance of $2,512,444 of the Debtors' policies with Continental, plus over $200,000 in prejudgment interest. CA-3596-3597. He held that Continental was judicially and equitably estopped from litigating the coverage issue anew.

Judge Efremsky began by examining the Section 155 Standard and the exceptions to its application. He noted that the case proceeded efficiently until Continental began to pursue its "newly discovered evidence" gambit. He concluded that Continental's reading of Section 8.3, failure to discuss the allocation issues with the Trustee, and introduction of its "newly discovered evidence" theory was unreasonable conduct that injured its insured. CA-3570. He further found that Continental's refusal to pay a single claim, coupled by its change in position with the arrival of its new counsel, caused additional vexatious delay. CA-3572.

Overall, Judge Efremsky found that Continental's admission that it had lost, coupled with its subsequent effort to "rewrite history," underscored the finding that it had vexatiously and unreasonably delayed paying the tendered claims. He explained that Continental's inconsistent positions, success in convincing the Trustee and the Court to rely on these positions, and the resultant unfair detriment that befell the Trustee, justified the application of judicial estoppel to prevent Continental from reopening the coverage issue. Similarly, he held that Continental was equitably estopped because allowing Continental to re-litigate the coverage issue would be inequitable and damaging to the Trust and its beneficiaries.

As a result of that vexatious conduct, Judge Efremsky also imposed a statutory penalty on Continental of $60,000, and an award of attorney fees to the Trust of nearly $800,000 plus expenses. CA-3595-97; CA-3601-02 ("Judgment").

### VIII. APPEAL TO THIS COURT

Continental appealed the *Barton* Order on September 7, 2017. On November 29, 2017, Continental appealed the Judgment. Continental moved on December 6, 2017, to consolidate the

United States District Court
Northern District of California

appeals because both concerned overlapping issues and because the *Barton* appeal could be mooted by resolution of the Judgment appeal. Dkt. No. 5. The Trustee, opposed, arguing that by seeking consolidation, Continental was simply further prolonging the litigation. Dkt. No. 12. On January 3, 2018, I granted Continental's motion to consolidate the briefing.

On appeal, Continental argues that the Trust has yet to meet its "obligation" to prove that Continental's policies covered any claim for which the Trust asserted coverage. AOB at 20. Continental argues, first, that I should reverse Bankruptcy Court Judgment because the court misapplied the doctrines of judicial and equitable estoppel, in large part because those doctrines cannot be used to establish insurance coverage. Second, Continental argues that I should reverse the award of attorneys' fees and penalty under Section 155 because these remedies require proof of actual insurance coverage and because Continental's behavior was not "vexatious." Third, Continental argues that I should reverse the order denying Continental's request to sue the Trust in Illinois court because the *Barton* doctrine did not apply. Finally, Continental argues that the Bankruptcy Court did not have jurisdiction to enter a final judgment on the Trust's Complaint.

In opposition, the Trust argues, first, that Judge Efremsky had jurisdiction to enter the Judgment. Second, the Trust argues that he did not err in estopping Continental from contesting coverage. Third, the Trust argues that the award of fees, costs, and a penalty under Section 155 was not an abuse of discretion. Finally, the Trust argues that Judge Efremsky did not abuse his discretion by denying Continental leave to sue the Trust in Illinois court.

## LEGAL STANDARD

This Court has jurisdiction to hear appeals from a bankruptcy court pursuant to 28 U.S.C. § 158(a). *Educ. Credit Mgmt. Corp. v. Pope (In re* Pope*)*, 308 B.R. 55, 59 (N.D. Cal. 2004). On appeal, a bankruptcy court's conclusions of law are reviewed de novo. *Id*. Its disallowance of a claim is also reviewed de novo. *In re* Salamon, 528 B.R. 171, 175 (B.A.P. 9th Cir. 2015), aff'd, 854 F.3d 632 (9th Cir. 2017) (citing *Margaret B. McGimsey Trust v. USA Capital Diversified Trust Deed Fund, LLC* (*In re* USA Commercial Mortgage Co.), 377 B.R. 608, 617 (9th Cir. BAP 2007)). Its findings of fact are reviewed according to a "clearly erroneous" standard. *Id*. "A bankruptcy court's factual findings are not clearly erroneous unless

14

they are illogical, implausible or without support in the record." *Ramon Palm Lane, Inc. v. Altman* (*In re* Desert Springs Fin., LLC), No. CC-16-1374-KuFL, 2017 Bankr. LEXIS 1144, at *13 (B.A.P. 9th Cir. Apr. 20, 2017) (citing *Ezra v. Seror* (*In re* Ezra), 537 B.R. 924, 929 (9th Cir. BAP 2015)). Any evidentiary rulings are reviewed for an abuse of discretion. *Sigma Micro Corp. v. Healthcentral.com (In re* Healthcentral.com*)*, 504 F.3d 775, 783 (9th Cir. 2007). A court "necessarily abuses its discretion when it bases its decision on an erroneous legal standard or on clearly erroneous findings of fact." *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 994 (9th Cir. 2011)).

**DISCUSSION**

I.  **WHETHER THE BANKRUPTCY COURT HAD AUTHORITY TO ENTER A JUDGMENT ON CLAIM COVERAGE BY ESTOPPEL IN THE ADVERSARY PROCEEDING**

A.  **Standard of Review**

The parties disagree over the standard of review that I should apply to analysis of the Judgment. They dispute whether the Bankruptcy Court had jurisdiction to issue a final judgment on the claim coverage issue by applying estoppel in the Adversary Proceeding.

The Trustee contends that the Judgment should be reviewed for abuse of discretion because the Bankruptcy Court's determinations fell within its core jurisdiction, and therefore it had authority to enter a final judgment. He also argues that that the Bankruptcy Court had jurisdiction and could issue a final judgment because Continental consented to its jurisdiction. The Trustee notes that although Continental initially contested the Bankruptcy Court's jurisdiction over the Adversary Proceeding, its subsequent repeated requests for the Court to enter "judgment," coupled with Continental's own filing of a proof of claim, demonstrate consent to the Bankruptcy Court's jurisdiction. Appellee's Brief at 24-25. Continental argues that the Judgment should be reviewed de novo because the proceedings were noncore and Judge Efremsky, therefore, had authority to issue only proposed findings of fact and conclusions of law for review by this Court. AOB at 13-14.

Judge Efremsky opined that he had core and non-core jurisdiction. He concluded that the

Adversary Proceeding was core under 28 U.S.C. § 157(b)(2)(A), (B), (L), and (O),[6] CA-3548, because it was the Continental's duty to perform as it had agreed to under the Plan, and it was the Trustee's duty to obtain payment from Continental for the coverage provided by its policies using the procedures set forth in the Plan. *Id.*[7] In the alternative, he concluded that he had noncore jurisdiction under the "close nexus" test of *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194 (9th Cir. 2005), and that at a minimum his opinion should be treated as proposed findings of fact and conclusions of law to be reviewed de novo. CA-3548.

However, I need not decide this question. I will assume that the Adversary Proceeding was noncore and apply the higher de novo standard of review. Doing so, as explained below, I fully adopt Judge Efremsky's findings and conclusions.

**B. The Bankruptcy Court's Estoppel Rulings**

Continental argues that the Bankruptcy Court had no authority to apply estoppel to hold that Continental owed coverage on the claims and to prevent Continental from litigating the merits of the coverage issue. More specifically, Continental contends that: (i) judicial estoppel does not apply where a positional change in litigation (as occurred here when Continental belatedly raised the coverage issue) arose from an error; (ii) equitable estoppel cannot be used to impose coverage obligations under applicable Illinois law; and (iii) the Bankruptcy Court's estoppel ruling constitutes an invalid modification of the Plan. I consider each argument in turn.

---

[6] "Core proceedings include, but are not limited to: (A) matters concerning the administration of the estate; (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 . . . but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11; . . . (L) confirmations of plans; . . . (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims . . . ." 28 U.S.C. § 157(b)(2).

[7] In a footnote, the Bankruptcy Court also raised, but did not rest on, the possibility that Continental's conduct in the Adversary Proceeding supported a finding that it had consented to the Bankruptcy Court's jurisdiction over coverage issues. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932, 1942 (2015) (litigants may validly consent to adjudication by bankruptcy courts). CA-684.

16

1. **Judicial Estoppel**

I review de novo and consider Judge Efremsky's ruling as proposed findings of fact and conclusions of law that judicial estoppel prevents Continental from disputing coverage of the claims, and for the reasons explained below affirm and adopt his findings and conclusions.

a. **Standard**

Federal law governs the application of judicial estoppel in federal courts. *Milton H. Green Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993 (9th Cir. 2012). Judicial estoppel is an equitable doctrine invoked by a court at its discretion; it is designed to "protect the integrity of the judicial process" and "prevent the improper use of judicial machinery." *New Hampshire v. Maine*, 532 U.S. 742, 749-750 (2001). It serves to "prohibit a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id*. at 749 (quoting *Pegram v. Herdrich*, 530 U.S. 2011, 227, n. 8). The Ninth Circuit "invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).

The circumstances where judicial estoppel applies are "probably not reducible to any general formulation." *Id*. (quoting *New Hampshire*, 532 U.S. at 750). There are three factors that courts "should consider in determining whether the doctrine is applicable in any given case." *Id*. at 993-994. These are: (i) whether the party's later position is clearly inconsistent with its earlier position; (ii) whether the party succeeded in persuading a court to accept its earlier position, creating a perception that the first or second court was misled; and (iii) whether the party seeking to assert an inconsistent position derives an unfair advantage or imposes an unfair detriment on the opposing party. *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1134 (9th Cir. 2012). However, these factors are not to be taken as "inflexible prerequisites" or as an "exhaustive formula for determining the applicability of judicial estoppel." *New Hampshire*, 532 U.S. at 751. Indeed, other considerations may "inform the doctrine's application in specific factual contexts." *Id*.

### b.    Application of Judicial Estoppel

(i)    **Clearly Inconsistent**.

As Judge Efremsky found, Continental's "current position" that its coverage obligations must be decided in state court was "clearly inconsistent" with a number of positions Continental took before him.  It was inconsistent with Continental's initial representation that the Bankruptcy Court's ruling on Continental's motion for summary judgment on the § 8.3 interpretation issue was the "threshold issue" that decided the case.  *See* CA-1052:20-21; 1052:7-11; 1058:19-1059:9. During the status conference where the motion for summary judgment was discussed, Continental repeatedly represented that "the whole case comes down to" the meaning of the words "allocated percentage" in Section 8.3 of the Plan." CA-1059.  At the May 2016 status conference, Continental's counsel stated:

> [If the Court] says that the allocated percentage means 100%, then the case is over, right? Because then that is effectively saying we have to pay everything, so we pay everything.

CA-1058.  This is clearly inconsistent with Continental's assertion, first made in March 2017, that the coverage issue had yet to be decided.

Continental's current position is also clearly inconsistent with its counsel's repeated position that, after it lost on the allocation issue at summary judgment, all that was left to be done in "the case" was entry of judgment on the Adversary Proceeding by Judge Efremsky.  CA-2421, 2425.  At the hearing before Judge Efremsky, the Trustee aptly analogized the inconsistency of asking the court to enter judgment on a complaint alleging coverage, only to later claim that coverage had not been decided, with that of a "man accused of murder [who] stands in front of the judge and says, "I plead guilty," . . . but then . . . comes back later and says, "I never said I murdered anyone, I just said I was guilty." CA-632.

The inconsistency between Continental's positions resembles that in *New Hampshire v. Maine*, where New Hampshire reversed its stance about the boundary line between the states during two proceedings in a similarly blatant fashion.  CA-2226-27; *see New Hampshire*, 532 U.S. at 754.  It also resembles the inconsistency in *Marilyn Monroe LLC*, where Ms. Monroe's executors presented contradictory arguments in subsequent proceedings about where Ms. Monroe

18

was domiciled, which had consequences for which state had personal jurisdiction over her estate. *See Monroe LLC*, 692 F.3d at 995-996.

Continental's conduct, belatedly raising the coverage issue after repeatedly admitting there was nothing left to do in the Adversary Proceeding except enter judgment after the "threshold issue" was resolved, was clearly inconsistent with its newly raised coverage position. I note, separately, that Continental's counsel before me on the appeal repeatedly attempted to downplay the very clear and very specific positions taken by their former's counsel in the Adversary Proceeding as "inappropriate procedural statements," "procedural mistakes," and otherwise mere "errors," arguing that estoppel cannot be found based on mistakes of counsel. AOB at 10, 39-40; Reply at 16-17. These post-hoc characterizations fail. Continental spent eight months negotiating a Plan to resolve the claims against it and *could have raised* the coverage issues it seeks to litigation now *within the claims process* under the agreed-to Plan. But it did not. It instead chose to reject the claims and litigate in the Adversary Proceeding on the narrow issue of allocation, without discussing or reserving other arguments on the claims. When it lost that "threshold" issue, it repeatedly agreed that judgment should be entered. Continental made its defensive position plain. It was not precluded from raising the coverage issue in the claims process or initially in the Adversary Proceeding, and chose not to do so. It is bound by that decision now, in light of the analysis of the two remaining estoppel factors discussed below.[8]

### (ii)    Court Adoption of Continental's Initial Position

As Judge Efremsky found, with ample grounds, Continental succeeded in persuading him, repeatedly, to accept its position that once the § 8.3 allocation threshold issue was decided, the case would be over. Here, the Bankruptcy Court changed its plans to hold a trial in accordance with Continental's insistence that the only thing left to litigate would be the Section 155 claim, which it suggested should be resolved through briefing. Continental represented that, after losing

---

[8] In its Reply brief on appeal, Continental chides Judge Efremsky for failing to explain why he disbelieved Tittman's statement that he did not intend to mislead the Court and that only he discovered "new facts" in March and April 2017. To the contrary, Judge Efremsky addressed and undermined Tittman's assertion of "new evidence" in detail. CA-3586. That Tittman did not intend to mislead Judge Efremsky or the Trustee is otherwise immaterial.

United States District Court
Northern District of California

the allocation issue summary judgment, the case was over; that position strongly informed Judge Efremsky's decision to set aside plans for a trial. As he wrote: "[w]ithout a doubt, this Court relied on the positions Continental took" following his summary judgment Order. CA-3583.

### (iii) **Unfair Advantage or Detriment**

As Judge Efremsky correctly found, Continental's actions – switching positions and raising a new defense after it has lost on the one presented – imposed an unfair detriment on the Trust. In addition to the procedural delays mentioned above, the change in Continental's position prolonged the administrative life of the Trust. CA-629. This had the consequence of increasing the Trust's operating costs and delaying and decreasing payments to the Trust's beneficiaries, who are receiving only pro rata recoveries on their claims. CA-809; 1088. The Trust's beneficiaries include individuals suffering from mesothelioma, lung cancer, colon cancer, and other illnesses. CA-968.

Judge Efremsky noted:

> Permitting Continental to litigate in state court would also allow Continental to eviscerate the agreements embodied in the Plan which Continental negotiated and described as the means by which its proof of claim was resolved. It would also permit Continental to prolong its campaign of stalling to avoid paying Tendered Claims. The Trust (and its beneficiaries) will necessarily suffer an unfair detriment from the expense and delay this proposed state court coverage litigation would impose.

CA-3585. His findings and conclusions are amply supported by the record and I adopt them.

Continental raises a number of counterarguments, none of which hold any water. Continental argues here, as it argued before Judge Efremsky, that under Illinois law a court cannot use estoppel to "create coverage." Judge Efremsky rightly distinguished this characterization of the judicial estoppel analysis; his application of estoppel was not *creating coverage* by estoppel. He was, instead, finding that Continental should not be allowed to relitigate coverage because that contradicted its repeated assertions that the coverage issue had been decided by the Bankruptcy Court's summary judgment decision.

Continental also argues that the Bankruptcy Court was wrong to consider its counsel's assertion about the summary judgment ruling ending the case as estopping further litigation on the

coverage issue because its attorney made that assertion in a different context. This argument is similar to another Continental makes on appeal —that judicial estoppel applies to factual inconsistencies, not procedural inconsistencies—and both are flawed for the same reasons. As Judge Efremsky noted in his decision, the Ninth Circuit in *Helfand v. Gerson*, when responding to a similar pair of arguments, explained that "it is the position stated, not the motivation behind the position, that guides [a court's judicial estoppel] analysis." 105 F.3d 530, 535 (9th Cir. 1997); *see also Baughman,* 685 F.3d at 1133 (stating that the Ninth Circuit has "applied the [judicial estoppel] doctrine to prevent a party from making a legal assertion that contradicted its earlier legal assertion"). Therefore, it does not matter that Continental claims that its attorney's statement that Continental had lost and judgment should be entered against it was an attempt to "ensure efficient progress in [the] litigation." CA-3582. The purpose behind the statement does not matter--the position stated does. The Ninth Circuit further held that "judicial estoppel applies to a party's stated position, regardless of whether it is an expression of intention, a statement of fact, or a legal assertion." *Id*. This undercuts Continental's argument that judicial estoppel applies only to factual assertions and not procedural statements like those made here.

Finally, Continental argues that judicial estoppel does not apply to error-based inconsistencies, because these are not instances of parties playing "fast and loose with the courts." *New Hampshire*, 532 U.S. 742, 750. Continental is right that "judicial estoppel seeks to prevent the deliberate manipulation of the courts, and therefore should not apply when a party's prior position was based on inadvertence or mistake." *United States v. Ibrahim*, 522 F.3d 1003 (9th Cir. 2008) (citing *Helfland*, 105 F.3d at 536) (internal quotation marks omitted). However, like the defendants in *Helfland*, Continental's decision to rest its defense to the claims on the allocation issue, and its alleged failure to obtain information about the underlying existence of coverage, were its own fault. The evidence Continental claimed to have "newly discovered" had in fact been in its possession for years. CA-3585-86.

Judge Efremsky's factual findings, including that Continental was "playing fast and loose with this Court" CA-3581, as well has his legal conclusions applying judicial estoppel, are fully supported by the record and the case law. I adopt them in full. CA-3587.

### 2. Equitable Estoppel

I also review de novo and consider Judge Efremsky's ruling as proposed findings of fact and conclusions of law that equitable estoppel also prevents Continental from disputing coverage of the claims, and for the reasons explained below affirm and adopt his findings and conclusions.

#### a. Standard

Under Illinois law, the "general rule is that where a person by his or her statements and conduct leads a party to do something that the party would not have done but for such statements and conduct, that person will not be allowed to deny his or her words or acts to the damage of the other party." *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313 (2001). Equitable estoppel is the "effect of the person's conduct whereby the person is barred from asserting rights that might otherwise have existed against the other party who, in good faith, relied upon such conduct and has been thereby led to change his or her positions for the worse." *Id.* It may arise "even though there was no intention on the part of the party estopped to relinquish any existing right." *Vaughn v. Speaker*, 126 Ill. 2d 150, 161 (1988).

A person bringing a successful claim of equitable estoppel must fulfill six elements:

> (1) The other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her reliance; (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof."

*Geddes*, 196 Ill. 2d at 313 (quoting *Vaughn*, 126 Ill. 2d at 162-63). The representation referenced in the first two elements need not be done with the intent to mislead or deceive. *Id.* at 314. Although fraud is an "essential element, it is sufficient that a fraudulent or unjust effect results from allowing another person to raise a claim inconsistent with his or her former declarations." *Id.* Further, the knowledge referenced in the second element may be actual or implied; for instance, "misrepresentations made with gross negligence can form the basis for equitable estoppel." *Vaughn*, 126 Ill. 2d at 162. Ultimately, the test is whether, considering all the circumstances,

United States District Court
Northern District of California

conscience and the duty of honest dealing should deny a party the right to repudiate the

consequences of its representations or conduct. *Bd. of Library Trs. v. Bd. of Library Trs.*, 34

N.E.3d 602, 613-14 (Ill. App. Ct. 2015).

### b.    Application of Equitable Estoppel

Judge Efremsky found that Continental's conduct fit "squarely" into the first two *Geddes*

elements in light of its counsel's December 2016 admission "in no uncertain terms that the case

was decided and judgment for breach of contract should be entered against it," a concession by

Continental that the claims were covered by its policies, and then its counsel's "reversal" of that

concession, claiming implausibly that Continental never conceded coverage issues. CA-3589.

Judge Efremsky characterized the "unjust" effect of allowing Continental to do that as "obvious"

and rejected its attempt to "recast its prior statements as a mere effort to be 'creative in ways to

manage' the case." *Id*.

As to the third element, Judge Efremsky concluded that the Trustee had "clearly and

unequivocally" established that he did not know that Continental disputed coverage, focusing

particularly on Continental and the Trustee's steps to agree on the form of judgment and the

timing for judgment to be entered. CA-3589-90. He then found, with respect to the fourth and

fifth elements, that the Trustee had:

> shown that Continental intended or expected that its statements
> would be acted upon and, they were, in fact, acted upon. The
> Trustee acted by not insisting on a trial date in May 2016, by not
> pursuing discovery, by agreeing that the §155 Issues could be
> resolved on the briefs, and by agreeing, for a second time, that the
> Court did not need to set a trial date

CA-3590. Finally, he found that prejudice is apparent for the same reasons as explained with

respect to judicial estoppel. *Id*.

On this appeal, Continental makes essentially the same arguments it unsuccessfully made

before Judge Efremsky. I conclude that Judge Efremsky's findings and conclusions regarding

judicial estoppel are fully supported by the record and the case law, and those findings and

conclusions are affirmed and adopted by me. As noted above, I reject Continental's attempt to

distinguish between misrepresentation or concealment of "material facts" and procedural

misstatements. Continental's positions in the Adversary Proceeding were not, as explained above,

23

mere "mistaken procedural comments" or procedural misstatements. The comments were intentionally made and induced action on behalf of the Trustee and the Bankruptcy Court. A significant "unjust effect" in prejudice to the Trust and the underlying claimants would result if Continental were permitted to back track and further prolong these proceedings by litigating an issue it could have, and should have, raised before.[9]

### 3. Whether the Estoppel Rulings Constituted an Invalid Plan Modification

On appeal, Continental makes a new argument; that the Bankruptcy Court's estoppel ruling constituted an invalid modification of the Plan. The parties dispute whether Continental may raise this argument for the first time on appeal, and if so, whether the ruling modified the Plan. However, assuming the issue may be raised for the first time on appeal, I conclude that Judge Efremsky's estoppel rulings did not modify or do not result in a modification of the Plan.

Continental contends that the estoppel ruling violated 11 U.S.C. § 1127(b) by modifying the Plan after "substantial consummation." That section provides that:

> The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title . . . . Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title . . . .

Continental argues, first, that the estoppel ruling materially altered the Plan because it eliminated the Trustee's obligation to prove coverage. Second, Continental argues that the Bankruptcy Court violated § 1127(b) because it amended the Plan after the Plan had been substantially consummated. Third, Continental contends that the Bankruptcy Court's equitable power may not override these otherwise applicable statutory requirements. In response, the Trustee argues that the Bankruptcy Court did not *force* Continental to concede on the coverage issue, but rather that Continental's own conduct led the Bankruptcy Court to forgo a trial on that

---

[9] Also, as explained above, Judge Efremsky did not apply equitable estoppel impermissibly under Illinois law in order to *establish* coverage. He appropriately applied estoppel to prevent Continental from contesting coverage after it had, by its actions, admitted it.

issue. I agree.

As an initial matter, if Continental wanted to raise the coverage issue during the claims administration process or during the initial Adversary Proceedings, up until the point of summary judgment, it could have done so. It made a choice not to do so. It chose to oppose the Adversary Proceeding Complaint on the *sole* ground that the Trustee misapplied the allocation provision of § 8.3 of the Plan. That was the only argument raised to defend against the Trustee's claim that Continental improperly failed to pay the claims, and after it was lost, Continental agreed that the "case" was essentially over. It bears repeating that Continental voluntarily entered the bankruptcy proceedings by filing its Claim and then spent months negotiating with the parties to agree to reach agreement on the Plan in general and § 8.3 in particular. Had Continental wanted to place a more significant burden on the Trustee to prove coverage, beyond the Trustee's duties in § 8.3, it could have done so. Even more significantly, Continental does not argue that it was prohibited from contesting coverage in the claims process that was agreed to or that the Plan itself otherwise prevented it from doing so. Instead, as provided by § 8.3, the Trustee was to submit claims for coverage to Continental, including "documentation," as well as the liquidated value of the claim and the allocated percentage. CA-35. Continental was then allowed to object. Its only objection to the claims at issue, however, was based on the allocated percentage. That was its choice and it is bound by it.

At base, there is no support for Continental's argument. Neither party cites, nor have I found, any Ninth Circuit case law holding that an estoppel ruling constitutes an invalid plan modification. The Bankruptcy Court made no changes to the Plan. It merely held that Continental was bound to its own previous arguments with regard to coverage and could not change positions once it had lost summary judgment and agreed that judgment should be entered. The Court's estoppel ruling did not eliminate the Trustee's obligation to prove coverage; Continental failed to hold the Trustee to that obligation when it told the Trustee and the Court that the Court's decision on Continental's motion for summary judgment "resolve[d] the issues in dispute." CA-2226. In holding that Continental was estopped from changing its position on the coverage issue, the Court relied on Continental's own previous statements; it did not rely on any part of the Plan.

Judge Efremsky's findings and conclusions in the Adversary Proceedings, as encompassed in his November 2017 Memorandum Decision and Order and the Judgment, resulted in the award of the policy limits of $2,512,444 plus $202,371.96 in prejudgment interest. This is fully supported by the record and the case law. The Bankruptcy Court's findings and conclusions are affirmed and fully adopted.

## II. WHETHER THE AWARD FOR ATTORNEYS' FEES AND A PENALTY WAS AN ABUSE OF DISCRETION

The Bankruptcy Court's Section 155 decision, imposing a statutory penalty as well as reimbursement of the Trustee's attorney fees and expenses, is reviewed for abuse of discretion. Under that standard, Judge Efremsky's decision is affirmed as being fully supported by the record.

### A. Section 155 Standard

Section 155 of the Illinois Insurance Code provides:

> (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
> (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
> (b) $60,000 . . .

215 Ill. Comp. Stat. 5/155. In enacting Section 155, the Illinois legislature sought to "punish insurance companies for vexatiously delaying or rejecting legitimate claims by holding insurers responsible for the expense resulting from the insured's efforts to *prosecute* the *claim,* and discouraging them from using their superior financial position by *delaying payment* of legitimate contractual obligations to profit at the insured's expense." *Cook v. AAA Life Ins. Co.*, 13 N.E.3d 20, 36 (Ill. App. Ct. 2014) (emphasis in the original; internal quotation marks omitted).

The trial court determines the allowance of fees and penalties under Section 155 at its discretion. *Id.*, at 37-38. A vexatious delay is one that was made without reasonable or probable cause or excuse. *Lazzara v. Howard A. Esser, Inc.*, 622 F.Supp. 382, 386 (D. N.D. Ill. 1985). In assessing whether a party has vexatiously and unreasonably delayed, a court must examine the "totality of the circumstances, taken in broad focus." *Keller v. State Farm Ins. Co.*, 180 Ill. App.

3d 539, 555 (Ill App. Ct. 1989). Neither the length of time, the amount of money involved, nor any other single factor taken by itself is controlling in determining if a delay is vexatious or unreasonable. *Id.* In examining the circumstances, courts have considered factors such as the insurer's attitude, whether the insured was forced to file suit to recover, and whether the insured was deprived of the use of its property. *Cook*, 13 N.E.3d at 37 (internal quotation marks omitted). Additional considerations include whether there is a bona fide dispute concerning coverage, the extent of the insurance company's evaluation and investigation of the claim, and the adequacy of communications between the insurance company and the insured. *Id.*

To that end, an insurer's conduct is not vexatious or unreasonable under Section 155 if: (i) there is a bona fide dispute concerning the scope and application of insurance coverage; (ii) the insurer asserts a legitimate policy defense; (iii) the claim presents a genuine legal or factual issue regarding coverage; (iv) the insurer takes a reasonable legal position on an unsettled issue of law. *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000). A "bona fide" dispute is one that is "[r]eal, actual, genuine, and not feigned." *Am. States Ins. Co. v. CFM Constr. Co.*, 398 Ill. App. 3d 994, 1003 (Ill. App. Ct. 2010) (citing Black's Law Dictionary 177 [6th ed. 1990]).

**B.      Application of Section 155**

Judge Efremsky began by assessing whether Continental unreasonably delayed the litigation. He noted that the case had proceeded efficiently until Continental began to pursue its "newly discovered evidence" strategy. This "earlier efficiency" did not stem from any "heroic efforts" on Continental's part, and the inquiry into Section 155 does not end with a finding that there was no unreasonable delay. CA-3568.

Judge Efremsky concluded that Continental did not present a *bona fide* dispute regarding the Plan. CA-3568. He considered Continental's lack of authority to support its argument that 100% allocation was not appropriate under Illinois law. CA-3569. Referring back to his summary judgment decision, he concluded that the Plan's allocation language was not in need of "nuanced interpretation," that Continental's initial interpretation was "strained and unreasonable" and that its later interpretation was even more so. *Id.* CA-3569-70. In addition, he found Continental's

27

United States District Court
Northern District of California

failure to even discuss the allocation issues with the Trustee – when it instead categorically rejected them – to be unreasonable as it furthered delay resolution of this case and imposed unnecessary expenses on the Trust.  CA-3570.

Judge Efremsky concluded that Continental's "newly discovered evidence" theory and its newly strained interpretation" of § 8.3 – which if accepted would "eviscerate" § 8.3 and allowing Continental to resolve coverage obligations in state court – was clearly unreasonable, concluding.

> As a party bound by the Plan, as a participant who negotiated the relevant terms of the Plan, and as an insurer whose obligations were incorporated into the Plan, Continental has engaged in objectively unreasonable conduct that has injured its insured.

CA-3570.

Finally, Judge Efremsky concluded that by December 2015, "there could be no 'bona fide' dispute regarding coverage" and Continental's obligation to pay the claims.  CA-3570.  He explained that because (i) Continental's only objection was to allocation, (ii) the Trustee continued to submit claims during the Adversary Proceeding, (iii) both sides acknowledged that the volume of claims *would* exhaust the policies, and (iv) yet Continental failed to pay a single claim, Continental's conduct was vexatious and intended to delay payment of the claims.  CA-3570-71.

Judge Efremsky rejected Continental's arguments that the Trustee, not Continental, delayed paying the claims from its other sources because the Plan required pro rata payments, thus requiring that this dispute be resolved before any claims could be paid.  He also rejected the argument that the Trustee was at fault for not providing Continental with copies of other potentially applicable insurance policies so that Continental could reassess its allocation defense, noting that Continental had access or the opportunity to request them.  CA-3573-74.  He again found that Continental was at fault for "inexplicably and unreasonably" failing to engage with the Trustee to resolve the litigation and therefore engaged in vexatious and unreasonable delay.  CA-3575-76.  Finally, he rejected Continental's "disingenuous" argument that the Trustee was responsible for any unreasonable delay because the Trustee provided "incomplete information" on the claims by noting that Continental never specifically identified any missing, corrupted or

otherwise incomplete materials submitted with the claims.   CA-3576-77.[10]

Each of these conclusions, as made by Judge Efremsky, is fully supported by the record and applicable case law.  Judge Efremsky did not abuse his discretion in finding that Continental's conduct was both vexatious and unreasonable under Section 155 and awarding both a $60,000 statutory penalty and the attorney fees and expenses incurred by the Trustee.

## CONCLUSION

Because I find that Judge Efremsky's findings and conclusions applying estoppel to prevent Continental from relitigating its liability under the claims were based on the record and in accordance with applicable law, I adopt those findings and conclusion.  Plaintiff/appellee Barry A. Chatz, the Trustee of the CFB/WFB Liquidating Trust, is entitled to recover from defendant/appellant Continental Casualty Company a Judgment in the amount of $2,512,444 as well as prejudgment interest in the amount of $202,371.96.

 I also find that Judge Efremsky did not abuse his discretion in awarding a statutory penalty and attorney fees under Section 155.

Therefore, in addition, plaintiff/appellee Barry A. Chatz, the Trustee of the CFB/WFB Liquidating Trust, is entitled to recover from defendant Continental Casualty Company the following:

A statutory penalty of $60,000 under applicable Illinois; and

Attorney fees of $664,106.52 and expenses of $9,364.03 for FrankGecker LLP under the Retention Agreement, plus $49,987.50 for additional claim review; and

United States District Court
Northern District of California

---

[10] Judge Efremsky also noted that any "evidence-based" attack on particular claims was indisputably not conducted by Continental during the 90 day claim review period set by the Plan, but was (if at all) only started in the Spring of 2017 after Continental came up with its new and changed course.  CA-3578-79.

Attorney fees of $76,186 and expenses of $886.19 for Cooper White & Cooper LLP.[11]

**IT IS SO ORDERED.**

Dated: September 17, 2018



William H. Orrick
United States District Judge

---

[11] Because the Judgment has been affirmed and adopted, I need not reach the question of whether Judge Efremsky's erred in denying Continental's motion for leave to file suit in Illinois Court to determine the coverage question.